IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION
IN ADMIRALTY

**ALETHEA SMITH, in her capacity
as executrix and duly appointed
legal representative of the Estate
of John L. Fairley**                                                      **PLAINTIFF**

**v.**                                                                         **CAUSE NO. 1:19CV13-LG-RHW**

**OMEGA PROTEIN, INC.**                                                        **DEFENDANT**

## AMENDED MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the [84] Motion for Summary Judgment filed by Defendant Omega Protein, Inc. ("Omega"). Defendant's Motion argues that the undisputed material facts entitle Defendant to summary judgment on Plaintiff Alethea Smith's claims under the Jones Act and general maritime law. The Motion is fully briefed. Having considered the submissions of the parties, the record, and relevant law, the Court finds that Defendant's Motion should be granted in part and denied in part. Plaintiff's Jones Act and unseaworthiness claims will be dismissed. Plaintiff's maintenance and cure claim, however, will proceed.

I. BACKGROUND

John Fairley was employed by Omega as a fisherman for 24 years. He was injured on August 10, 2015, while working aboard the F/V GRAND CHENIERE. The fishing net was stuck around the bumper of the boat, and as he attempted to free the net, his left upper hand, arm, and shoulder were pulled into the net's hydraulic power block. He suffered injuries to his head, neck, left arm, left wrist,

and left hand. In April 2016, Fairley was diagnosed with cancer of the laynx and soft pallet. He underwent significant cancer treatment, including surgeries and radiation therapy, but died on October 13, 2019 (after this lawsuit had already been filed). No one disputes that his death was caused by cancer – it was not the result of any injury suffered on August 10, 2015. This is solely a survival action for Fairley's injuries, pain, and suffering before death; Plaintiff makes no wrongful death claim.[1] Omega does not dispute Fairley's status as a seaman in Omega's employ.

At Singing River hospital, where Fairley was first evaluated, he was diagnosed with a left arm and hand contusion and neck strain. Fairley then followed up with Dr. Terry Taylor at Occupational Medicine Clinic, who diagnosed him with a crush injury to the left hand and wrist and a cervical strain. Dr. Taylor also ordered an MRI, which suggested a possible fibrocartilage complex injury and a nondisplaced scaphoid fracture. Fairley was referred to Dr. Andrew Blevens[2] of Bienville Orthopaedic Specialists, who continued to treat Fairley until November 10, 2015, at which point he determined that Fairley had reached maximum medical improvement. Although Fairley said he complained to Dr. Blevens about his hand (which was still fractured) on that last day of care, Dr. Blevens discharged Fairley and permanently released him to return to full work duty without restriction. Dr.

---

[1] "[T]he wrongful death action is to recover damages to beneficiaries resulting from the decedent's death, the survival action is to recover damages the decedent could have recovered but for his death." *Azzopardi v. Ocean Drilling & Expl. Co.*, 742 F.2d 890, 893 (5th Cir. 1984).
[2] Smith characterizes Dr. Blevens as "a company doctor." Omega disputes this characterization.

– 2 –

Blevens found that Fairley did not suffer from any impairment under the AMA Guides and that his condition was not expected to worsen.

Omega paid for Fairley's medical treatment through November 10, 2015 and paid him maintenance for the same time period. Fairley never returned to work at Omega. He applied for unemployment through the Mississippi Office of Employment Security on November 20, 2015, representing that he expected to return to work on April 15, 2016 when the menhaden finishing season reopened. But he was diagnosed with cancer that April and instead applied for long term disability. Fairley did not make a demand for ongoing maintenance and cure until he filed this lawsuit on August 23, 2018.[3] However, Smith contends that Omega did not further investigate Fairley's maintenance and cure claim.

On August 21, 2019, Fairley was examined by Dr. Darrell Henderson, a Board-certified plastic and reconstructive surgeon and a fellowship-trained hand surgeon. Dr. Henderson found that Fairley presented with significant pain and severely limited functionality in his left hand (Fairley was unable to lift a gallon of milk with his left hand) and opined that these symptoms were more probably than not caused by Fairley's work-related accident on August 10, 2015. He also opined that the treatment provided to Fairley through November 10, 2015 – which he characterized as "conservative" – did not fully cure the problems with which Fairley had been diagnosed. Dr. Henderson estimated Fairley's level of impairment to his

---

[3] The case was filed in the Western District of Louisiana and later transferred to this Court after the federal district court in Louisiana determined that proper venue was in the Southern District of Mississippi.

left arm and hand to be 80% and identified several surgical procedures that Fairley should have undergone, which – in combination with use of a bone growth stimulator – he says would have brought Fairley's left extremity impairment to between 35% and 45%.

On December 4, 2019, Omega filed the instant Motion for Summary Judgment. The Motion asserts that Smith cannot sustain any of the three causes of action: (1) the Jones Act claim fails because no statutory beneficiaries exist to benefit from the action; (2) the unseaworthiness claim fails because the Court should find the Jones Act's limitation on the eligible class of beneficiaries applicable to general maritime personal injury claims; and (3) the maintenance and cure claim is foreclosed because Fairley reached maximum medical improvement on November 10, 2015 and received maintenance and cure up to that date. Smith disagrees with each of Omega's contentions.

## II. DISCUSSION

a. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate

specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

   b. <u>Plaintiff's Jones Act Claim</u>

The Jones Act affords seamen a negligence cause of action against their employer for injuries suffered in the course of employment. 46 U.S.C. § 30104. The Jones Act explicitly incorporates and adopts the framework of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, which provides railway employees with a personal injury cause of action. *See* 46 U.S.C. § 30104; *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (stating that Congress "incorporat[ed] FELA unaltered into the Jones Act").

As Omega highlights, FELA limits the beneficiaries of a deceased seaman's personal injury claim under the Jones Act:

> Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, *for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee*, but in such cases there shall be only one recovery for the same injury.

45 U.S.C. § 59 (emphasis added). Thus, "while the suit under [FELA] is brought in the name of the personal representative, the personal representative really sues . . . not for the benefit of the estate of deceased, but as statutory trustee for the sole benefit of the beneficiaries specifically named in the Act." *Friedman v. McHugh*, 168 F.2d 350, 352 (1st Cir. 1948) (alteration in original). Fairley testified at his deposition that no statutory beneficiaries exist. He has no living spouse, children, parents, or dependent kin.

Plaintiff argues that the statutory limitation on the class of eligible beneficiaries does not apply under the circumstances here, where the injury that is the basis for Fairley's claims was not the cause of his death. But the statutory language does not except these circumstances: *any right of action given by the Jones Act to a person suffering injury* survives for the benefit of certain persons. No distinction can be made for a decedent whose work-related injury did not kill them.

"[I]f the employee leaves no survivors in any of the classes of beneficiaries alternatively designated, it necessarily follows that the personal representative cannot maintain any action to recover damages . . ., since there is no beneficiary in whose behalf such an action can be brought." *Lindgren v. United States*, 281 U.S. 38, 41 (1930). Plaintiff cannot maintain a Jones Act claim because there exists no

– 6 –

eligible beneficiary for whom damages could be recovered. Plaintiff's Jones Act claim will be dismissed.

    c. <u>Plaintiff's Unseaworthiness Claim</u>

The general maritime law imposes on a shipowner the duty to provide a seaworthy vessel. "The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness . . . ." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). "[T]he warranty of seaworthiness [is] a strict liability obligation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 25 (1990).

The Fifth Circuit has held that the general maritime law provides a survival action for pain and suffering prior to death, *Law v. Sea Drilling Corp.*, 523 F.2d 793, 795 (5th Cir. 1975), at least in cases where the Death on the High Seas Act, 46 U.S.C. §§ 30301-08, does not apply, *see Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 123-24 (1998). But Omega argues that Plaintiff cannot pursue a general maritime law survival claim because (1) Congress limited the class of eligible beneficiaries for maritime personal injury cases by passing the Jones Act and (2) the Supreme Court has consistently emphasized the importance of uniformity in matters of maritime law. As far as the Court is aware, these issues present a matter of first impression. The controlling caselaw and legal principles contained within, however, are well established.

Omega primarily relies upon *Miles v. Apex Marine Corp.*, in which the Supreme Court held (1) that the general maritime law provides a wrongful death

cause of action for the death of a seaman, (2) that there is no recovery for loss of society under general maritime law in a seaman's wrongful death action, and (3) that general maritime law does not allow recovery for lost future income in a seaman's survival action.[4]  In reasoning its way to these conclusions, the *Miles* court made several foundational determinations.  First, the Jones Act, which overruled *The Osceola*, 189 U.S. 158 (1903), to provide a negligence cause of action for the death or injury of a seaman, "evinces no general hostility to recovery under general maritime law.  It does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness . . . ." 498 U.S. at 29.  Second, although admiralty courts have traditionally undertaken to supplement maritime statutes, "when [Congress] speak[s] directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Id.* at 31 (citation an internal quotation marks omitted).[5]  Thus, "in an 'area covered by statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries.'" *Id.* (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)).

---

[4] The Supreme Court declined to rule – and has yet to rule – on whether the general maritime law provides a survival action.
[5] Perhaps restated more precisely, "courts cannot create new maritime remedies that exceed those approved by Congress in the Jones Act and DOHSA.  But, at the same time, courts should be careful not to eliminate preexisting remedies in the name of uniformity, as those statutes were intended to expand, not to narrow, the protections available to seamen." *In re Asbestos Prod. Liab. Litig. (No. VI)*, No. 02-MD-875, 2014 WL 3353044, at *6 (E.D. Pa. July 9, 2014)

Omega seizes upon this last language from *Higginbotham*, restated in *Miles* – that in an area covered by statute, it would be inappropriate to prescribe a different class of beneficiaries. *Miles* concluded that the Jones Act's limitation of wrongful death recovery to pecuniary damages prevented the Court from permitting recovery for loss of society under an unseaworthiness theory of liability. Omega contends that the Jones Act's limited class of beneficiaries is equally preclusive, here. The Court agrees.

In *Atlantic Sounding Co. v. Townsend*, the Supreme Court emphasized that "[t]he reasoning of *Miles* remains sound," explaining that *Miles* barred the creation of new "common-law remedies that exceeded those remedies statutorily available under the Jones Act and DOHSA." 557 U.S. 404, 420 (2009). "Specifically, *Miles* limited the remedies available in a seaman's wrongful death action – a type of action created by the Jones Act and extended to general maritime claims by *Moragne*[ *v. State Marine Lines, Inc.*, 398 U.S. 375 (1970)]." *Asbestos Prod. Liab. Litig.*, 2014 WL 3353044, at *6; *see also McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 388-90 (5th Cir. 2014) (en banc). Maritime law prior to the passage of the Jones Act and DOHSA "gave no right to recover indemnity for the death of a seaman, although occasioned by unseaworthiness of the vessel." *Lindgren*, 281 U.S. at 47; *see also Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 371 (1932) ("[T]he remedy for [a seaman's] injury ends with his death in the absence of a statute continuing it or giving it to another for the use of wife or kin."). Thus, *Miles* did not narrow preexisting remedies to conform to remedies subsequently fashioned by

Congress; rather, it ensured that a subsequent judicially-created remedy did not exceed the limits of the statutory remedy from which it was derived. *Miles* said that the remedies available in general maritime law wrongful death actions are limited to those available under the Jones Act.

The Fifth Circuit has recognized the existence of a survival action under general maritime law; the Supreme Court has yet to. Regardless, maritime survival actions – like maritime wrongful death actions – do not predate the Jones Act. *See Miles*, 498 U.S. at 33 ("Under traditional maritime law, as under common law, there is no right of survival; a seaman's personal cause of action does not survive the seaman's death. . . ."). So "[w]here [state survival] statutes do not apply . . . , or where there is no state survival statute, there is no survival of unseaworthiness claims absent a change in the traditional maritime rule."[6] *Id.* at 34. In the Jones Act, "Congress has placed limits on recovery in survival actions that we cannot exceed." *Id.* at 36. "Because this case involves the death of a seaman, we must look to the Jones Act." *Id.* The Jones Act, by express incorporation of FELA, says that any survival action shall be "for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." 45 U.S.C. § 59. No statute has extended this class of beneficiaries in maritime tort claims.[7] This Court is accordingly without authority to give Plaintiff the right to pursue an

---

[6] Importantly, Plaintiff does not argue that a Mississippi survival statute applies to this case, allowing for the survival of Plaintiff's unseaworthiness claim. *See, e.g., Holland v. Steag, Inc.*, 143 F. Supp. 203, 206 (D. Mass. 1956).
[7] And DOHSA copies it exactly. *See* 46 U.S.C. §§ 30302, 30305.

unseaworthiness-based survival action for the sole benefit of Fairley's estate.[8] *See Miles*, 498 U.S. at 31 ("[I]n an 'area covered by statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe . . . a different class of beneficiaries.'") (quoting *Higginbotham*, 436 U.S. at 625); *Dooley*, 524 U.S. at 123 ("Petitioners concede that their proposed survival action would necessarily expand the class of beneficiaries in cases of death on the high seas by permitting decedents' estates (and their various beneficiaries) to recover compensation. . . . Because Congress has already decided th[is] issue[], it has precluded the judiciary from enlarging . . . the class of beneficiaries . . . .").

   d. <u>Plaintiff's Maintenance and Cure Claim</u>

"Maintenance and cure is [a shipowner's obligation] to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). "Maintenance is a daily stipend for living expenses, whereas cure is the payment of medical expenses." *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (citation and internal quotation marks omitted). "The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment." *Id.*

---

[8] This is despite, as Plaintiff notes, the heightened legal protections afforded seaman, who are considered "wards of admiralty." (Resp. Opp. 15, ECF No. 86.)

– 11 –

Omega argues that Dr. Blevens' determination that Fairley reached maximum medical improvement[9] ("MMI") on November 10, 2015, combined with Omega's payments through that date, means no material facts exist as to Plaintiff's claim for maintenance and cure and Omega is entitled to judgment as a matter of law. But as Plaintiff correctly contends in opposition, Omega's position ignores the possibility that a later medical determination to the contrary – that MMI has not been reached – can resuscitate the vessel owner's duty to provide maintenance and cure. *See Pelotto v. L & N Towing Co.,* 604 F.2d 396, 401 (5th Cir. 1979) ("[S]eamen have always been accorded the right to bring serial suits to collect maintenance payments as they come due.").

"'Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman . . . until the point of "maximum cure."'" *Barto v. Shore Constr., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015) (quoting *Pelotto,* 604 F.2d at 400). "Maximum cure occurs 'when it appears probable that further treatment will result in no *betterment* of the seaman's condition.'"[10]  *Id.* (emphasis in original) (quoting *Pelotto*, 604 F.2d at 400). "'It is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure . . . .'" *Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985) (quoting *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 202 (1st Cir. 1980)). "However, such a

---

[9] Also sometimes referred to as "maximum cure" or "maximum medical cure."
[10] "'Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved.'" *Barto*, 801 F.3d at 476 (quoting *Pelotto*, 604 F.2d at 400).

– 12 –

determination should be unequivocal to terminate the right to maintenance and cure." *Id.* "When there are ambiguities or doubts [as to a seaman's right to receive maintenance and cure], they are to be resolved in favor of the seaman." *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990) (quoting *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962)).

The instant case is, for all material purposes, identical to the facts of *Johnson v. Marlin Drilling Co.*, which accordingly controls this Court's analysis (at least at the summary judgment stage). In *Johnson*, the plaintiff, Johnson, produced the deposition testimony of one doctor, Dr. Jackson, stating that Johnson had not yet reached MMI because further surgery would improve his physical condition. *Id.* Johnson's employer produced (1) a note written by another doctor, Dr. Steiner, stating that Johnson had "improved to a static level" nine months prior to Dr. Jackson's evaluation, (2) the deposition testimony of Dr. Steiner and Dr. Jackson from Johnson's prior Jones Act lawsuit (presumably opining that Johnson would not benefit from additional treatment). *Id.* Without holding an evidentiary hearing, the trial court determined that Johnson had reached MMI at the date of Dr. Steiner's note. *Id.* The Fifth Circuit reversed and remanded for an evidentiary hearing, finding unresolved by the evidence "whether, if Johnson had reached maximum medical cure as of the date of Dr. Steiner's office note (also the date payments were terminated), October 2, 1987, Johnson was again entitled to maintenance and cure based on Dr. Jackson's later findings." *Id.* at 79-80.

Here, Plaintiff has offered the sworn statements of Dr. Henderson, opining that the condition of Plaintiff's left hand and wrist would have benefited from additional medical treatment. Omega has offered medical evidence to the contrary, but the Court is not in a position to weigh this evidence on a motion for summary judgment. *Cf. Martin v. L & M Botruc Rental, LLC*, No. CV 16-14717, 2019 WL 112482, at *8-9 (E.D. La. Jan. 3, 2019); *Gorum v. Ensco Offshore Co.*, No. CIV.A. 02-2030, 2002 WL 31528460, at *5-7 (E.D. La. Nov. 14, 2002), *aff'd as amended,* 80 F. App'x 353 (5th Cir. 2003). This is especially true where all ambiguities and doubts are to be resolved in the seaman's favor. Omega's Motion is therefore denied with respect to Plaintiff's claim for maintenance and cure.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [84] Motion for Summary Judgment filed by Defendant Omega Protein, Inc. is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** insofar as Plaintiff's Jones Act and unseaworthiness claims are **DISMISSED**. The Motion is **DENIED** as to Plaintiff's maintenance and cure claim, which will proceed.

**SO ORDERED AND ADJUDGED** this the 12th day of May, 2020.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE